Good morning, your honors. John Vecchione, New Civil Liberties Alliance for Plaintiff Appellants, Bill Wuerld and Dave Dackman. Both of those gentlemen are consumers of dishwashers and washing machines right now. And they are in the market. That's what consumer means for these dishwashers and washing machines that have been prohibited by DOE, unlawful regulation of the amount of water each device can use. Can you even buy such things? You can't buy the washers from the 2012 regulations. Those are in effect right now. Those are the 2024 right now are not in effect. It's the 2012 ones. But those also prohibit more than the statute prohibits. So the Energy Policy Act of 1975 as amended only allows water efficiency limits for shower heads, faucets, water closets and urinals. And that's it. And that's always been it. And yet, the... It really uses the phrase water closets? It does. I don't know if it's European or... I think that's an 18th century term. Well, in Ireland and England, they still call it the WC wherever you go. So I thought maybe it was some sort of European import, but I did not look it up. That would make sense. So they do. And they state it. And even more than that, when they state what the water flow is, they state water flow goes through shower heads, faucets, water closets and urinals. So even the definition of water flow states those four devices. So then Congress did amend it and they did say here's what washers and dishwashers, washing machines and dishwashers can use as water flow. And they put a limit on it. And we're not complaining about that. We're not complaining about the statute and we're not complaining about the energy regulation in this suit. Anyway, so what this case is about is it's an ultra-virus claim that has been preserved by the statute. 42 U.S.C. 6306B4 says all remedies here are in addition to and not in substitution of what you have. And this is very important for this case. Because if you look at this court's decision in Cochrane and you look at the Abbott Labs case, both of them had appellate statements very similar to the EPA here. They said may, you may bring these. But your other remedies that you have are preserved. And those preservation statutes are important. Because here we and if you look at even if you look at the Thunder Basin factors, in this case, the government has said those regulations that go directly to an appellate court are those that are prescribed under 6293, 6294 or 6295. And that's important here because as we say in our briefs, it's purported to be issued under those. Purported to be. But under Loper-Bright, the first thing one does is decide what power was granted to the agency. And here it's very clear as I opened my statement, what they can regulate the water flow of is, in fact, those four items that I mentioned. That's a mantra now. I can just say showerhead, faucets, water closets, and urinals very fast. But that's what they are when I. So you're, I think what you're saying, and I don't mean to interrupt you, I just want to understand the argument, that you're saying, well, the rule wasn't validly prescribed under any of those sections and so therefore the channeling provision of the Court of Appeals doesn't apply. Exactly. Okay. So you wanted to be able to file this lawsuit in district court, but it was dismissed for lack of jurisdiction. Correct. Okay. What advantage, why wouldn't you just file it here then? We did do a preservation petition. Your Honor, it's stayed now because of this. But the reason is because of the remedies you get. An ultra-virus claim, we can get a future statement. It's not vacate and set aside the 2024 regulation. It is to say, don't do this anymore. You're not allowed to do this. We couldn't say that? The Court of Appeals couldn't say that? It appears to me under the APA. Now, if this court wants to say, we're allowed to do all these things. I mean, I understand your point about remedies and that we think about remedies for the APA quite a bit. Vacate or set aside, all that. But I'm just, I'm trying to think through why it makes a difference that it would be filed here in the district court vis-a-vis the remedies. So there's a couple of reasons. First of all, in here, when you're looking for an injunction, I think district court is a little bit faster. I do believe that. But the real reason is It depends on the district court. That's true, Your Honor. But I think the real reason is the remedies under a traditional ultra-virus equitable claim. I am sure what I get under that. I am not so sure because I couldn't find a case and I haven't, my friend hasn't pointed one out either. And the reason why I think the government likes this route better than the other route is because they can just go back and do it again. You know, I think in this case, they did it in 2012 for dishwashers and washing machines saying lowering the amount of water they could use from what Congress had set. And then they did it again in 2024. So, I mean, to paraphrase Oscar Wilde, if you do it once, it might be a misfortune. But to do it twice is carelessness or it means they don't care what statute says. So I do think We had a prior decision on this issue, right? Yes. The Louisiana v. DOE. Yes. I remember reading it. But what light does it shed on the procedural argument, the jurisdictional argument that we're considering here, that case? So in that case, it doesn't, I believe that was petitioned. But Louisiana and they had standing, they had standing, I'm pretty sure I have it here, but I don't think it is directly apples to apples, Your Honor. But it is for standing purposes, it is apples to apples because they were consumers the same as my guys are consumers. That's exactly the same. But in that case, since I don't recall whether or not there was a district court opinion, I don't recall reading it, I think it might have gone directly. But it is on standing exactly what we have here. And there they remanded it back to the agency for further procedures in the agency. So I think, so in any event, I think that case is very good because it's also the case which says, I'm sorry, you're only allowed to regulate water in these four areas and not in these other areas. And the government is going to say and does say that when they amended the statute, EPA, to allow Department of Energy to regulate dishwashers and washing machines, they meant what they really meant was to allow the water flow to be regulated. And I noticed something that it's not in our briefs, but it is in the addendum to the government's brief. They cite that amendment and it's there in their addendum. And what did they add? They added dishwashers, washing machines, and fluorescent lamp ballasts. I'm not a handy guy. I don't know what fluorescent lamp ballasts are. So I looked it up before I came here. Fluorescent lamp ballasts have nothing to do with water flow. Nothing. They have no water. They're used at the base of lamps to drive electricity up to the lamp. They apparently invented it in 1884. But in any event, the fact that that amendment has another device that has no water in it means that the whole government argument about this is what they were doing makes no sense because you wouldn't have included a water amendment in a fluorescent lamp ballast which has nothing to do with water flow at all and lumped them in with dishwashers and washing machines because the only similarities between those items is they all use electricity. So I think the government's argument there is completely ill taken given what else is in that amendment. And so I do want to say, to answer your Honor's question a little. Yeah, I'm looking at Louisiana v. DOE. I mean, that was a direct petition. I believe it was, Your Honor. So in any event, but the fact is the standing is the same as ours. But the fact of the matter is also they were again trying to undo, they were trying to undo, there had been a petition to make a rulemaking and then when the Biden administration came in, they took it away and they took it away for arbitrary and capricious reasons was the finding of this court. They hadn't looked at the fact that people were going to use more water to wash dishes and things like that. But it was remanded. It wasn't, nobody was looking for an injunction and declaratory judgment saying, look, you keep doing this. You've done this in widely separated time periods, multiple times. We need an injunction that we can get under an ultra-virus cause of action in the district court to stop doing it until the statute's amended. And the reason that, and I've noticed in a number of these types of cases, people do file in the district court and then petition because they're unsure. I'm pretty sure, in fact, I'm certain that this cause of action was preserved by the Congress on purpose because what if they decided not even to use it? Well, let's say the Department of Energy said, you know what? Those kids are using too much water in the super soakers. We're going to say how much water you can put in the super soakers. Well, do I have to put in a petition before the federal circuit and go up when it's completely clear that that's not part of the appellate jurisdiction under 6295? This case is almost that except to be fair, Congress hasn't said you may regulate the electrical power of the super soaker, but they have said, here's the items you get to regulate water on, Department of Energy in your name, which is energy, and we're going to allow you to do water in these areas. So it would be that ultra virus, and if you look, whether it's lead them Kyle or if you look at this court's Cochran and Supreme Court's Abbott Labs, you see the same sort of thing going on that's going on here. It's so absolutely clear that it's illegal because not only has Congress stated, here's the devices where you can regulate water and no others, and the Fifth Circuit says, the other side says it's not binding. I will say it is dicta in that case. But it's very strong dicta. It's here's how the statute works and here's how we're seeing it works, and yet they go back and do it again anyway. So that's why I think that the idea that a petition directly to this court is efficacious in this matter is just not true, and the whole idea that the government says, oh, we'll follow this in the future, well, they're not going to be the administration forever, and they can't make that representation. It can change tomorrow. That's why you want a district court. That's why you want an equitable relief that the government has left you by statute. So we think that this is a relatively easy case when you look at those particular precedents. The other thing they bring up, the nuclear regulatory case by the Supreme Court, which I think is absolutely different from this case, and it's different for a number of reasons. The number one reason, though, is that the petitioners in that case had already lost this argument in the D.C. Circuit. They had made this same kind of argument in the D.C. election, and they had been denied. They appealed it to the D.C. Circuit, and the D.C. Circuit said your whole theory is all wet. And then they go and they try in the Fifth Circuit. They come to Texas, and they try here, and they're told it's all wet, and they say, well, no, this is really ultra-virus. I think to show how this is preserved is how clear it is that the government's not allowed to do this. Even the government's considering right now to withdraw these regulations because they don't think they're allowed to do it. But the next administration could change that. But this is a case, I think, that comes very, very clearly under Abbott Labs, under the Cochran case, where what is being asked is completely outside the statutory path that Congress wanted people to go to when they think that the regulation is unreasonable. Where are they currently in the move to withdraw the rule? You will have to ask my friend on the other side exactly where they are. I'm not sure. I haven't seen any action on it. But I do believe that they have basically published in the regs that they're going to reconsider whether they're even allowed to do this. But again, that would not, that would, you know, I think about, I think a little bit about the book, The Right and Relentless. And the problem, part of the problem there and why Chevron went away is because every time the administration changed, the exact same statute would change 180 degrees. And the reason we want to move in the district court and get an injunction here is we don't want the statute, which we think is absolutely clear, we think it's clear on its face through all the textual and plain language you want, we think it's clear. The Fifth Circuit, having said what it means already in Louisiana v. Doe, and yet... And what is the basis of the argument that that is dictum? Because they didn't tell them not to do it. So it seems to be a discussion. And we've admitted in our briefs, whether we're wrong or not, we think it is, and the government thinks it is, because they weren't directed to do anything. It was a discussion about what the statute actually means. And I think that it was learned discussion and gave the administrations a very nice blueprint of what they should do, but it didn't say, you go do this upon remand. That's not what they said. Well, it remanded for... It remanded to the agency for proceedings consistent with the  Correct. So I'm not sure that it's the same as saying... I mean, when they said arbitrary and capricious, they said, you didn't even consider how much water this is going to be using. And I think they went there rather than go the full route, the way courts often do to avoid... When they think that there's an easy error real fast, why go through anything more? I mean, that's kind of how I read it, but that's why I think it's dictum. But I think it's very clear. It's very strong dictum. It's the sort of thing where if I was the agency, I wouldn't have been messing with it. Let me put it that way. So if there's no further questions, I'll reserve my time for rebuttal. Okay. Thank you, sir. Mr. Baldi. What is the status of the withdrawal of the rules? So the agency has received comments and they're under consideration, but I don't have a timeline for you on when the agency may act on the proposal. But they issued a pair of proposed rule makings. In that, they noted that the agency is reconsidering whether it actually has this authority, but they've not made a decision on that yet. If we could, I think, start... I understood petitioners or plaintiffs in their brief to say that the 16-306, this administrative review scheme, provides, at least for many of these rules where they're seeking APA remedies, a path into court, the petition for review scheme that Congress designed. Here, the agency's asserted authority for issuing these rules was 6295, and so we fall within this scheme where Congress created express petition for review jurisdiction to come to this court, and this court can provide a remedy. We saw that in the Louisiana case. I think just since we've been discussing it, I do want to note in Louisiana, the statutory issue wasn't briefed or argued, and so if you look at page 472 of that decision, the court says, look, it appears the assertion of regulatory jurisdiction is not in accordance with law and in excess of statutory authority, yet we need not reach this question, first, because petitioners do not ask us to hold, and second, because it's arbitrary to purchase for independent reasons. So the court opined on it, to be sure, but this... I don't think you can... It's fair to say that the agency is just sort of ignoring this court's decision. You have a scheme... We didn't reach the question, is what you're saying? You expressly did not reach the question, yes, Your Honor. You have a scheme that provides the means for review, as this court has held over and over again. In an APA case, it can universally vacate a rule. The government's briefing the PFR will have a footnote saying we disagree, but that's the law of the circuit. We get that. And that is an effective remedy, because what you have to look at here is sort of what is the injury plaintiffs are complaining of? They say their injury is compression of the market, because these features aren't available. The rationale for that is that there are these rules that are compressing the market. If those rules are vacated, the injury is gone. That is a complete remedy. I really don't... I know of no ultra-virus case where a party can come into court and say, there is something out there that is available right now. It's not delayed. I don't have to go through an agency process, anything else. It's available right now. It would provide complete relief, and yet that is inadequate review. But that has to be placed in position, because otherwise ultra-virus review is off the table. They point to the desirability of some sort of injunction precluding the agency from ever sort of regulating in this area again. I think that theory doesn't work for a number of reasons, and they all basically relate to the idea that that's not how we litigate cases in the common law system. We take one case and one injury at a time, and we solve it, and we move on. I don't agree with that. If the law doesn't... I mean, in the Louisiana case, if the court had authority to say that this was beyond the power of Congress, right? Well, I don't think anyone's alleged it's beyond the power of Congress. They've alleged that the agency has that right. About beyond the power of the agency. Excuse me. This court could absolutely, in the course of adjudicating a PFR, declare what the law is and create binding precedent in the circuit, and the government would run into a buzzsaw any time they tried to regulate again. I mean, we're here on whether there's jurisdiction or not. Yes, Your Honor. My point is that there is exclusive jurisdiction in this court to hear these sorts of claims, just like you did in Louisiana. Well, so what do you say about this Clause 4, remedies provided for in this subsection should be in addition, do not substitution for other remedies? Yes, Your Honor. I would say you would look at this in the context of these two subsections, B and C. B says the way to review this is a PFR in this court, and then at the end, it has these two savings provisions. It says that the remedies are in addition to, so we're not deleting anything, we're not intending to remove any remedies that might be available in the Court of Appeals, which is this section being about PFRs. And then the next section says, and we're also not intending to amend these procedures accidentally. And I think the way you know that, and the way this is different from Abbott Labs, is if you look at subsection C, the next section, it expressly creates jurisdiction in the district court for two types of proceedings that aren't at issue here, about whether states are complying in certain types of participatory rulemaking. We don't have those here. Abbott Labs was the exact opposite situation, where Congress said there is direct review in the Courts of Appeals for a certain enumerated set of types of actions, and the government's position there was, well, that must foreclose all other review. But it's, so critically, the difference is the default here is the Court of Appeals, not the district court. And the question is not, in Abbott Labs, the question was, is there judicial review in this posture at all? Here, it's not a question of whether judicial review at all. It's a choice between whether it comes here, as Congress intended, or whether it goes to the district court. Can you explain to me, this may involve some speculation, but I'll ask anyway, the structure of this jurisdictional statute that says you file a petition in the Court of Appeals except in these two particular instances in C1 and 2. What's the idea there? Why make that distinction? So I don't know that there's legislative history on this. I would be speculating. But what the Second Circuit said in the Abraham case was that these two types of decisions wouldn't come at the end of a rulemaking procedure, where there would be sort of the fully developed administrative record, so it might make sense to have things occur in district court. Well, I see. Because C1 is about whether state or local government is complying with the requirements of C1. Yeah. And there could be some fact-finding there. Whereas these kinds of questions, we're talking about pure questions of law. They'd be reviewed here de novo anyhow. And so these are the sorts of cases that get channeled here. And this case resolves dozens of petitions for review in these types of cases every year. But Judge Jones asked about the remedies part, in addition to but not in substitution for. How do you read the word remedies there? Right. So I think it is saying, as a savings provision, we're not foreclosing anything we might do. And the example I would give you is relief issued under the All Writs Act that this court could issue. So for example, a writ of mandamus to compel action unreasonably withheld. That is something that Congress is making clear that's not true. The APA covers all of that, though, right? I don't think so, Judge Jones. And I don't think that was clear, necessarily, in 1975 or 76. So when this court issues a writ of mandamus before final agency action, saying you've unlawfully delayed this or withheld this action, there's no final agency action. And so the jurisdictional basis is the All Writs Act. And it's an aid of the prospective jurisdiction in the case you'd eventually hear. How often does that happen? It happens, I mean, the government defends these in the DC Circuit quite frequently. I don't know about other circuits, but there's an entire line of cases there, sort of the jurisdictional basis for that became clear in the 80s. So where would one file a mandamus like that? So the rule is you file a mandamus not in the district court, but in the Court of Appeals. What, as an initial matter? Yes, it is an initial petition for writ of mandamus. The case that establishes this in the DC Circuit, and that I understand every other circuit to have adopted, is Track, which we cite for other propositions in our brief. But it's 720 F. Second 70. But that's the sort of thing where it's a writ in aid of jurisdiction. It's a remedy that can be achieved, that can be obtained by the plaintiff. And I think in this pair of savings clauses, Congress is saying, we're not foreclosing any of this. But I think the whole structure of this says, the default rule here is you bring these challenges to this court, and this court can decide whether it's lawful or not. And if this court concludes it's unlawful, it can issue a decision, declare that, create binding precedent in the circuit, and set aside the rule. And I think that is a complete remedy. I mean, I assume you're making this argument that if B-4, remedies in B-4, refers to the ability to file a lawsuit in the district court, that totally abrogates B-1, 2, 3, and C, right? I think that is right. You're making that argument. That's basically right. I think C, I think, makes no sense in light of that. You could envision a world where there might be concurrent jurisdiction with 1, 2, and 3. But the basic this court's precedent is that unless Congress says expressly otherwise, the vesting of jurisdiction in the court of appeals is a divestiture of the general grant of jurisdiction to the district court. Hmm. Yeah. OK. I just want to make sure I have fully discussed the remedial issue and why, you know, ultraviolence review, in general, we can talk about ThunderBase, we can talk about lots of things, but the easiest way, I think, to resolve this case is to say that ultraviolence review categorically is not available when you have other relief available, when you have an adequate form of adequate access to judicial review. And I think that resolves this case. It is a break glass in case of emergency option, and there's no reason to break the glass here. What plaintiffs say they want in terms of this sort of forward-looking injunction, like, I don't think it's available to them, either under principles of standing or principles of equity. So plaintiffs say, we have an injury. It would be solved, which is the compression of the market. It would be solved by the set aside of the rule, but we think there might be something in the future that could harm us. If you look at standing, City of Los Angeles versus Lyons says you can't rely on that sort of future speculative injury that may or may not occur. I think, I'm not sure, but I think what they're saying is, so there would be no future regulation that would bear on water usage by dishwashers and washing machines. Your Honor, that is certainly what the injunction they would like. Categorically, period. End of story. That is certainly the injunction they would like. I'm saying as a matter of Article III and as a matter of principles of equity, that is categorically not available to them. Well, if the statute doesn't say it, I don't see why you can't ensure. Your Honor, this court could- If you could say that as a matter of APA review. So this court can certainly say, as the law of the circuit, this is how we interpret the statute, and again, any future regulation would come here and it would, I assume, very quickly be preliminarily halted and then halted and then set aside. But there's a difference between applying coercive relief to the government, saying, you may never attempt to regulate something where you haven't expressed any, you haven't said you intend to regulate. The principle of an injunction is that you give a remedy that is sufficient to resolve the harm and no greater. It has to be tailored, and the remedy they're seeking isn't tailored. Again, I'm not sitting here telling you that the government is, wants to regulate here, is continuing to regulate here, there's a pending rulemaking to rescind the rules, but I'm saying that this sort of, the only argument they have that the PFR scheme is inadequate is that they should be able to obtain this type of relief that just isn't available. Well, if it were available, and I'm not saying it is, but if it were available, why couldn't we do it too? So I'm not saying it's available. I'm just saying there's a distinction being made between the district court's authority and our authority. Yeah. And I don't understand the distinction. So I think the question is sort of what the grant of jurisdiction is to this court to issue such an injunction. When you issue, for example, an injunction pending appeal, it's an aid of your future jurisdiction, so it's the All Writs Act. It's not totally clear to me that the APA would allow you to do this, because it sort of provides this set of relief. I'm not taking the position that it could never happen. I think you would have to, I'm not sure exactly how you would fashion it, but... Do you know where can I find specifically written the kind of relief that they want? Is it in the... Yeah, so I think the, if page 18 of the record is their prayer for relief... Sorry, say page what? Page 18. Page 18, but I just wanted to know where to find it. Yeah, and it's a declaratory judgment, a pair of injunctions, cost attorney's fees, and other relief. Again, this court can and does declare the law when issuing a, yeah. Obviously. So the question is just sort of the injunctions. I don't know if I'll get anywhere on this, but if I have a couple minutes, I'll just very briefly touch on our standing arguments and one particular element of our standing arguments, which is I think how you distinguish this case from Louisiana. In the complaint, the plaintiffs have sort of two sentences on standing. It's paragraph 43, this is page 17. They say they're consumers of consumer appliances that are unlawfully regulated and they're harmed because their choice is eliminated. What they don't say is what the state said in Louisiana, which is that they have, you know, they would buy new things if given the opportunity. And I think that's important because... Isn't that implicit in their complaint? I don't think so, Your Honor. I mean, these are durable goods. People keep their dishwashers and washing machines for 10, 15 plus years. If you had one of the low water usage washing machines, you might consider purchasing a new one. That is very fair, Your Honor, and if they had said that in their complaint, I wouldn't be making this argument, but I think standing is an irreducible... You might consider running the cycle twice. Yeah, that may well be their position, but I think they need to plead that in their complaint to establish standing. So if there are no further questions, the judgment should be affirmed. All righty. Thank you very much.  Mr. Vecchione. Thank you, Your Honor. Briefly, Iqbal and Twombly, we affectionately call it Twickbal, only makes us plead a short, plain statement. We use the term consumer. My brother and I were discussing, neither of us briefed these. We are arguing, having taken it over from other folks, but the fact of the matter is that if you look up, I looked up Blacks, but you can do Websters, you can do anything. The consumer means the person who is in the market now buying these... He says you haven't pled that you're the consumer now or that you will purchase in the future. I think the word consumer, as it's defined, says both those things. If you look at Blacks Fifth is what I looked, it's 1979, so it's kind of close to 1974, and it's also before the other amendments of dishwasher and washer. So I think the consumer and the complaint beforehand, where we complain about the fact that it doesn't have enough water in it, all through the complaint, and my brother was correct, it's on page 12, excuse me, page 11 of the complaint, which, and I think it's also the record, says plaintiffs are consumers of consumer appliances that are unlawfully regulated by the defendant. The consumer appliances that are unlawfully regulated are all the preceding paragraphs we described why they're unlawfully regulated, and they say they're harmed by these recent direct final rules because their choice of preferred clothes washers or dishwashers would be eliminated by these rules. So I don't think we have to go through a big rigmarole saying all this stuff when you look at the precedent of what contract the market is. I mean, in this case, and if you look, and I could... Presumably you could amend your complaint if you needed to to say, and I want to buy this stuff. Now, right. And the fact is, even if you look at the cases, I took this case over from the Competitive Enterprise Institute, and that's interesting because CEI was the one who did the petition early on to do the rules that were in DOE versus Louisiana, and the case of CEI versus one of the car marketers that I saw in that case is just this. It's that these cars are going to be... We want to buy bigger cars, and we're consumers of bigger cars. I think it was the exact same thing, and it was enough. So I think this is just making us do things that aren't required by law. The claims for relief are indeed exactly where my friend said they were, and I just want to bring up the idea that the All Writs Act or any of these acts allow these type of injunctions to come out of the appellate court. I haven't seen it, and I have seen it in district courts, and an ultra-virus claim allows you to get these. I'm positive that relief was allowed, and to answer Judge Duncan's question, if you look at what was preserved in the district court, it's a claim against the states that would not... If the states aren't complying with this, it is not clear that you could go into the appellate courts and do a petition that the state wasn't complying with the DOEs. That's different from saying the DEOA did something wrong. So that's what they're preserving, and it makes sense. And their idea that nothing was preserved makes the statute completely surpluses. All right. Thank you, sir. We'll be in recess for 10 minutes.